# United States Court of Appeals
## For the First Circuit

No. 23-1947

GUSTAVO EVELIO MENDEZ NOLASCO
and BLANCA AMERICA NIZ MENDEZ,

Petitioners,

v.

PAMELA J. BONDI,
United States Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
and Rikelman, Circuit Judge.[**]

Kristian R. Meyer, with whom Kevin P. MacMurray and MacMurray & Associates were on brief, for petitioners.

Joanna L. Watson, Senior Trial Attorney, Office of Immigration Litigation, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela J. Bondi is automatically substituted for former Attorney General Merrick B. Garland as Respondent.

[**] Judge Selya heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's decision. The remaining two panelists issued the opinion pursuant to 28 U.S.C. § 46(d).

Division, and <u>Anthony P. Nicastro</u>, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

———————————

April 23, 2025

———————————

**RIKELMAN**, <u>Circuit Judge</u>.  Gustavo Evelio Mendez Nolasco ("Gustavo") and Blanca America Niz Mendez ("Blanca") petition for review of the denial of their applications for cancellation of removal under 8 U.S.C. § 1229b.[1]  They contend both that their four children would suffer exceptional and extremely unusual hardship if they were to return to Guatemala, and that the Board of Immigration Appeals (BIA) made several errors of law in concluding otherwise.  Finding no legal error in the agency's application of the hardship standard to the record here, we deny the petition.

## I. BACKGROUND

### A. Relevant Facts[2]

Petitioners are natives and citizens of Guatemala.  Gustavo entered the United States without inspection in 1981, and Blanca entered the United States without inspection in 2001.  The couple married in the United States in 2004.  They live in Lynn, Massachusetts, where they are very involved with their local church.

---

[1] For clarity, we use the first names of Petitioners and their family members in this opinion.  We mean no disrespect in doing so.

[2] We draw the relevant facts from the administrative record, including testimony by Gustavo and Blanca that the Immigration Judge (IJ) credited.

Since about 2011, Gustavo has run his own company, Mendez Landscaping and Construction. Blanca works as a bookkeeper and manager for the company, which has six employees on its payroll. At the immigration hearing, Gustavo estimated that the company was worth approximately $500,000 and explained that, over the years, he has re-invested about $200,000 back into the business, including by purchasing trucks, trailers, and other machinery. The couple's tax returns reported a business income of approximately $70,000 per year. In 2016, they purchased a home for $500,000, which they have since extensively remodeled.

Gustavo and Blanca have four children; the three youngest are United States citizens. Their fourth child, Aldo, is twenty-six and is a Legal Permanent Resident (LPR). Aldo is Blanca's biological son and Gustavo's stepson; he has lived with both of them in the United States since he was ten years old. At the time of the 2019 immigration hearing, he was studying architecture at the local community college. Gustavo and Blanca's three youngest children speak and understand minimal Spanish and cannot write in Spanish. At the time of the hearing, the children were healthy and doing well in school.

## B. Procedural History

In late 2017, Petitioners were served with Notices to Appear charging them with removability. In response, they applied for cancellation of removal, arguing that removal would cause

exceptional and extremely unusual hardship to their children. At the 2019 hearing on the merits of their applications, Gustavo testified that "everything would be ruined" if the family were removed to Guatemala. He also stated that he was afraid that his children would be deprived of opportunities in Guatemala, in part because of the gang violence, poverty, and substance abuse problems in the country. Blanca echoed those fears, testifying that her children "would lose their education" and her husband would lose his business. On cross-examination by the government, Gustavo and Blanca were questioned about their previous interactions with law enforcement. Each admitted to past arrests for various misdemeanors, which they had not disclosed prior to the hearing, and Blanca acknowledged one conviction.

The IJ denied Petitioners' applications for cancellation of removal in a written order on July 22, 2019. The IJ determined that they were statutorily ineligible for cancellation of removal for two independent reasons. First, the IJ found that Gustavo and Blanca had not been forthcoming about their criminal histories and thus had not demonstrated good moral character. Second, the IJ concluded that the couple's qualifying relative children would not suffer the requisite level of hardship if they were to return to Guatemala with their parents. In making the "exceptional and extremely unusual" hardship determination, the IJ considered "the children's comfort and familiarity with the language and way of

life" in Guatemala, "the economic stake [Petitioners] ha[d] gained in the United States," and Petitioners' concerns about their children's "safety and education." The IJ made several factual findings related to hardship; for example, she recognized the three youngest children's limited familiarity with Spanish and the value of Gustavo's landscaping company and the family home. The IJ also found that, as an adult and LPR, Aldo could petition for his parents to have their status legally adjusted, "further mitigating the hardship the qualifying relatives would face." Although the IJ acknowledged that the conditions in Guatemala posed "significant" challenges for the children, she concluded that those hardships were not "'substantially beyond that which would ordinarily be expected' upon removal." Matter of Monreal-Aguinaga, 23 I. & N. Dec. 56, 59 (BIA 2001).

Petitioners appealed to the BIA, which affirmed the IJ's decision and dismissed the appeal in October 2023. The BIA determined that the IJ had "properly considered the evidence in the record regarding hardship" and highlighted some of the IJ's key findings, such as the children's limited Spanish language skills, the couple's assets, and Aldo's ability to remain in the United States to continue his education. Then, citing several of its precedential decisions on the hardship inquiry, the BIA concluded that "for the reasons stated by the [IJ], . . . Petitioners did not meet their burden of establishing

- 6 -

that their removal will result in exceptional and extremely unusual hardship to their lawful permanent resident child and their United States citizen children."  And because the BIA "agree[d] with the [IJ]'s" exceptional and extremely unusual hardship assessment, it did "not address the [IJ']s [additional] determination that the [couple] did not establish the requisite good moral character."[3]

## II. STANDARD OF REVIEW

We begin by laying out the scope of our review.  In immigration cases, we typically focus our review on the BIA's final decision.  See Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020).  "But 'to the extent that the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision' as well."  Khalil v. Garland, 97 F.4th 54, 61 (1st Cir. 2024) (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)).  "When we discuss the BIA and IJ's decisions as a unit, we refer to the BIA and IJ as 'the agency.'"  Id. (citation omitted).  Because the BIA's ruling rested entirely on the exceptional and extremely unusual

---

[3] Petitioners submitted additional evidence to the BIA to provide context regarding their previous misdemeanor arrests and Blanca's conviction. The BIA noted that it "generally cannot consider any new evidence proffered on appeal," and that "[t]he additional documentation" the couple submitted was not "sufficiently material so as to warrant a remand." Petitioners do not challenge the BIA's refusal to consider this additional evidence, nor do they rely on any of that evidence in their petition to this court.

hardship determination, we review only that aspect of the agency's decision.

To be statutorily eligible for cancellation of removal under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Petitioners must show, among other things, "that [their] removal would result in 'exceptional and extremely unusual hardship'" to a qualifying relative. Figueroa v. Garland, 119 F.4th 160, 162 (1st Cir. 2024) (quoting 8 U.S.C. § 1129b(b)(1)(D)). The statutory exceptional and extremely unusual hardship standard is a legal standard. See Wilkinson v. Garland, 601 U.S. 209, 217 (2024). Thus, although we lack jurisdiction to review the agency's ultimate exercise of discretion in deciding whether to grant cancellation of removal in a particular case, see 8 U.S.C. § 1252(a)(2)(B)(i), we have jurisdiction to review the agency's application of that statutory standard to a given set of facts because it presents "a question of law under § 1252(a)(2)(D)," Wilkinson, 601 U.S. at 217. In Wilkinson, the Supreme Court specified that this review is meant to be "deferential." Id. at 225.

At the outset, the parties disagree on whether and to what extent Wilkinson's "deferential" standard governs our review. Petitioners contend that the Supreme Court's decision in Loper Bright Enterprises v. Raimondo effectively abrogated Wilkinson. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412-13 (2024)

- 8 -

(holding that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous") (overruling Chevron, U.S.A. v. Nat. Res. Def. Council, 467 U.S. 837 (1984)). In response, the government argues that Wilkinson remains good law and requires us to apply the deferential substantial evidence standard in reviewing the agency's fact-intensive hardship determination.

We need not determine the standard of review applicable here, however, because we conclude that Petitioners' claim would fail even under the de novo standard that they urge us to adopt. See United States v. Goncalves, 123 F.4th 580, 586 (1st Cir. 2024). Accordingly, without resolving that open question, we review the agency's legal determinations de novo for the purposes of this appeal.

Turning to the "exceptional and extremely unusual hardship" standard, we note that Petitioners do not challenge the agency's interpretation of that hardship standard but rather challenge the agency's application of the undisputed standard to the facts of their case. Thus, we apply the "exceptional and extremely unusual hardship" standard as the BIA has interpreted it.

To qualify as "exceptional and extremely unusual," "the hardship to a[] [noncitizen's] relatives . . . must be 'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country." Matter of Monreal, 23 I. & N. Dec. at 62 (citation omitted). "[C]onsideration should be given to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." Matter of Gonzalez Recinas, 23 I. & N. Dec. 467, 468 (BIA 2002). These factors must be considered "in the aggregate." Matter of Monreal, 23 I. & N. Dec. at 64. Ultimately, however, "any hardship case . . . succeeds or fails on its own merits and on the particular facts presented." Matter of Recinas, 23 I. & N. Dec. at 469. All in all, the exceptional and extremely unusual hardship "standard is supposed to be hard to meet." Tacuri-Tacuri v. Garland, 998 F.3d 466, 474 (1st Cir. 2021), abrogation on other grounds recognized by Figueroa, 119 F.4th at 165 (1st Cir. 2024). Thus, relief should be granted only in "truly exceptional" circumstances. Matter of Monreal, 21 I. &. N. Dec. at 62 (citation omitted). With this framework in mind, we proceed to the merits.

## III. DISCUSSION

### A. Whether the Agency Departed from Binding Precedent

Petitioners contend that the agency committed a legal error when it failed to apply binding BIA precedent to the facts of their case.[4] We disagree that the agency misapplied its precedent and thus find no legal error.

To start, some of the cases upon which Petitioners rely in making this claim of legal error were decided before Congress enacted IIRIRA. See Matter of O-J-O-, 21 I. & N. Dec. 381 (BIA 1996); Matter of Ige, 20 I. & N. Dec. 880 (BIA 1994). As a result, in those cases the BIA was interpreting and applying the "extreme hardship" standard found in the Immigration and Nationality Act's suspension of deportation provision. See 8 U.S.C. § 1254(a)(1) (repealed 1996). However, when Congress enacted IIRIRA, it substituted "cancellation of removal" for "suspension of deportation" and replaced "extreme hardship" with "exceptional and extremely unusual hardship." See Pareja v. Att'y Gen. of U.S.,

---

[4] Petitioners assert that the BIA "departed from its settled course of adjudication" regarding exceptional and extremely unusual hardship. The settled-course standard is typically reserved for review of discretionary decisions by the BIA. See INS v. Yang, 519 U.S. 26, 31-32 (1996). The decision challenged here -- the application of the "exceptional and extremely unusual hardship" standard to a given set of facts -- is not discretionary. See Wilkinson, 601 U.S. at 218. Thus, the more appropriate inquiry is whether the agency failed to follow its own binding precedent in evaluating Petitioners' claim. In substance, we understand this to be Petitioners' argument, and we evaluate the argument based on this understanding.

615 F.3d 180, 185 (3d Cir. 2010) (laying out legislative history and BIA interpretation of IIRIRA).

As the BIA has explained, by making that change, Congress "imposed a standard of hardship that is significantly more burdensome than the former 'extreme hardship' standard." Matter of Andazola-Rivas, 23 I. & N. Dec. 319, 322 (BIA 2002); see also Matter of Monreal, 23 I. & N. Dec. at 62 ("[T]he term 'exceptional and extremely unusual hardship' is a more restrictive standard than the 'extreme hardship' standard . . . particularly as it was applied in Matter of O-J-O-."). Indeed, Petitioners repeatedly acknowledge that the "exceptional and extremely unusual" hardship standard controls and do not contend that it is legally equivalent to "extreme hardship."[5] Thus, we conclude that the BIA did not commit legal error by not citing to or relying upon pre-IIRIRA precedent in deciding Petitioners' case.

Next, Petitioners argue that the BIA legally erred by failing to conclude that their hardship claim was indistinguishable from the successful claim in Matter of Recinas. They contend that "under the framework of Matter of Recinas[,] a

---

[5] In any event, as we explain in Section III.B, the record indicates that the IJ considered the relevant factors under Matter of O-J-O- and the related case law cited by Petitioners. Compare, e.g., Matter of O-J-O-, 21 I. & N. Dec. at 382-83 (listing relevant factors), with Administrative Record 81 (citing Matter of Monreal, 23 I. & N. Dec. at 63 (providing nearly identical list of "proper factors to be considered")).

finding of hardship was required" because, like the petitioner in Recinas, they also have multiple children who have limited Spanish skills, and their children would face educational and financial challenges in the country of removal. See 23 I. & N. Dec. at 469-72. The BIA applied IIRIRA's exceptional and extremely unusual hardship standard in Matter of Recinas, so Petitioners are correct that this precedent is relevant to their case.

But Petitioners' claim of legal error based on Recinas nevertheless fails: That decision does not establish that the exceptional and extremely unusual hardship standard is satisfied whenever an applicant has multiple children who would need to learn a new language and who would face worse educational and financial prospects upon removal. Instead, the agency's decision in Matter of Recinas was based on the "totality" of the circumstances presented in that specific case. Matter of Recinas concerned a single mother of six children who received no support from her ex-husband, had less than $5,000 in financial assets, and had no family in Mexico, her country of citizenship. See id. at 469-70, 472. And, critically, her own mother, on whom she relied heavily for both financial support and regular childcare, also resided in the United States. See id. at 470-71. In addition, two of Recinas' children struggled to communicate in Spanish. See id. In concluding that Recinas had met the hardship standard, the BIA emphasized that it was considering "the totality of the burden on

- 13 -

the entire family that would result when a single mother must support a family of this size." Id. at 472. On those facts, the BIA reasoned that "the heavy financial and familial burden on [Recinas]," along with the lack of family support in Mexico and the younger children's unfamiliarity with Spanish, combined "to render the hardship in [that] case well beyond that which is normally experienced in most cases of removal." Id.

By contrast, Petitioners here are co-parenting four children, two of whom are legal adults. Further, Petitioners' financial assets, which include a house and business, were valued at over $700,000 in 2019. Additionally, the IJ found it significant that the couple's oldest child, Aldo, was a LPR who could petition for his parents to have their status lawfully adjusted. To be sure, the IJ also found that the younger children had limited Spanish skills. But that fact alone is not a basis to conclude that the agency departed from its own precedent in Matter of Recinas in ruling against Petitioners on the hardship inquiry, particularly when the agency relied on other material facts to distinguish the couple's hardship claim from the claim in that case. See Williams v. Garland, No. 20-2074, 2024 WL 3273988, at *4 (1st Cir. July 2, 2024) ("Rather than show that the BIA applied different rules to similarly situated applicants for relief, the cases provided by Williams demonstrate that the BIA applied the

- 14 -

same rules, encountered differently situated applicants, and as a result, reached different conclusions.").

**B. Whether the Agency Failed to Consider Relevant Factors**

We turn next to Petitioners' claims that the agency committed legal error by failing to (i) consider relevant factors in its hardship analysis and (ii) evaluate the relevant factors in the aggregate. After a careful review of the agency's decision, we see no such legal errors.

First, Petitioners contend that the agency overlooked certain factors relevant to the hardship determination, including the sociopolitical conditions in Guatemala, their longtime residency in the United States, and their lack of family ties to Guatemala. Whether the agency failed to consider relevant factors in the hardship determination is a legal question, and so we have jurisdiction to review it. See Perez-Trujillo v. Garland, 3 F.4th 10, 22-23 (1st Cir. 2021) (concluding that the "BIA erred as a matter of law" by "ignor[ing] altogether a particularly salient aspect" of the petitioner's hardship claim). But, again, we find no legal error in the agency's analysis on this score.

The agency's decision demonstrates that it did consider the relevant hardship factors. See Ayeni v. Holder, 617 F.3d 67, 73 (1st Cir. 2010). The IJ specifically referenced Petitioners' longtime residency in the United States. She also considered the effect of Guatemala's sociopolitical climate on the children,

- 15 -

including the "poor education system in Guatemala," the "lower standard of living and gang violence," and the general "difficulty of adjusting to life in another country." And although the IJ acknowledged that those concerns were "significant," she nevertheless concluded that they were not "substantially beyond that which would ordinarily be expected" (citation omitted).[6] In reviewing the couple's appeal, the BIA found that the IJ properly considered the evidence in the record regarding hardship.

To be sure, the IJ made no explicit findings related to the couple's family ties in Guatemala or the United States. But unlike Petitioners' claims about country conditions in Guatemala or their long-term residency in the United States, they have not explained how consideration of family ties would bolster their hardship claim. Rather, they concede that they both have family in Guatemala and do not mention any extended family who live in the United States. Thus, we cannot conclude it was legal error for the agency not to explicitly address the "family ties" factor in the absence of argument or evidence indicating how that factor would support Petitioners' hardship claim. Cf. Aldana-Ramos v. Holder, 757 F.3d 9, 16 (1st Cir. 2014) (remanding to agency where

_____

[6] Before our court, Petitioners contend that they would be more susceptible to the violence and economic disadvantages in Guatemala than others would be because Blanca and her daughter are women. But they never raised this argument to the agency, and so we cannot review it. See Martínez-Pérez v. Sessions, 897 F.3d 33, 41 n.6 (1st Cir. 2018).

"[t]he factual record . . . does not preclude and would even allow the BIA to find that petitioners" had established a protected ground in asylum case).  In sum, we find no merit to the contention that the agency did not consider the relevant hardship factors.

Second, Petitioners suggest that the agency failed to conduct a "totality of the circumstances" review as required by BIA precedent.  See Matter of Monreal, 23 I. & N. Dec. at 64 (explaining that "all hardship factors should be considered in the aggregate").  But the IJ explicitly referred in her decision to the collective "economic and emotional hardships that the children may face" in adjusting to life in another country, as well as "concerns about [their] safety and education" in Guatemala and limited Spanish language skills. She then determined that those hardships were typical of what "is expected" and did not rise to the level of exceptional and extremely unusual. The BIA adopted that analysis on appeal.  Accordingly, we cannot conclude that the agency failed to evaluate the hardship factors in the aggregate.

## C. Whether the Agency Erred in its Review of the Record

Petitioners also claim that the BIA failed to apply the appropriate standard of review to the IJ's factual findings.  See Barros v. Garland, 31 F.4th 51, 57 (1st Cir. 2022) ("[W]hen the BIA reviews the IJ's findings of fact, it reviews them only for clear error.").  We have held that the BIA's application of the incorrect standard of review to an IJ's decision is a legal error.

See H.H. v. Garland, 52 F.4th 8, 19 (1st Cir. 2022). But there is no indication that an incorrect standard was applied here. The BIA cited the correct standard of review (clear error), then concluded that there was no such error in the IJ's assessment of the key record facts, which it proceeded to discuss.

To the extent Petitioners challenge those underlying findings of fact -- including the IJ's determination that their children could speak and read some Spanish, and that Aldo could remain in the United States to finish school -- we lack jurisdiction to review them. See Wilkinson, 601 U.S. at 222. In any event, the IJ did not make a finding that Aldo definitively would not relocate with the rest of the family; rather, she stated that "it is his decision as an adult to determine whether or not he wants to move to Guatemala with his family." From that finding, the IJ concluded that if Aldo remained in the United States, he could avoid any disruption to his education. And, again, Petitioners have raised no "colorable legal question" regarding the BIA's decision to affirm that finding under clear error review. Pareja, 615 F.3d at 189 (petitioner's "assertion that the BIA 'assumed' that [her child] would return with her . . . is wholly undetermined by the record").

Finally, we reject Petitioners' contention that the record compels reversal. Petitioners acknowledge in their briefing that to rise to the level of "exceptional and extremely

- 18 -

unusual," the hardship to a noncitizen's qualifying relative must be "substantially beyond that which would ordinarily be expected to result from" removal.  (Citing Matter of Monreal, 23 I. & N. Dec. 19 at 62).  Petitioners have failed to make this showing. The agency found that their children are healthy, that they do well in school, and that they speak and read some Spanish.  The agency also found that Petitioners have "considerable assets . . . which can assist them in establishing a life in Guatemala."  As the agency indicated, "[a] lower standard of living and emotional hardship are not unusual consequences of removal." And Petitioners have not otherwise shown that the hardship suffered by their children due to country conditions in Guatemala, though significant, would be exceptional and extremely unusual compared to that which would ordinarily result from a noncitizen's removal. Accordingly, we disagree that the agency erred in its application of the statutory hardship standard to the facts of this case.

## IV. CONCLUSION

For all these reasons, we **deny** the petition for review.