# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3672

_____

| | | |
|---|---|---|
| Marcos Zacarias-Velasquez | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of the |
| v. | * | Board of Immigration Appeals. |
| | * | |
| Michael B. Mukasey, Attorney | * | |
| General of the United States of | * | |
| America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 12, 2007
Filed: December 4, 2007

_____

Before MELLOY, BEAM, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Marcos Zacarias-Velasquez, a native and citizen of Guatemala, entered the United States without inspection and filed an application for asylum. He failed to appear for a scheduled interview, and an immigration judge ("IJ") dismissed his application. Subsequently, immigration authorities commenced removal proceedings against him, and he filed a second application for relief, this time seeking asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), cancellation of removal, and voluntary departure. Zacarias-Velasquez conceded removeability, and a different IJ denied all forms of relief other than the privilege of

voluntary departure. Zacarias-Velasquez appealed the decision to the Board of Immigration Appeals ("the BIA") and also raised a due process claim regarding alleged deficiencies with an interpreter as well as alleged improper conduct by the IJ. The BIA adopted and affirmed the IJ's decision. The BIA also held that Zacarias-Velasquez failed to prove his due process claim because he failed to show the interpreter was incompetent, the IJ acted improperly, or an alleged deficiency caused prejudice. Zacarias-Velasquez now petitions this court for review. He seeks reversal, or alternatively, a remand to a different IJ for a full and fair hearing on the merits of his claim with a competent interpreter. We deny the petition.

## I. Background

### A. Factual Background

In his initial asylum application, Zacarias-Velasquez stated that he served in the civil patrol in Guatemala and was detained and threatened by guerrillas. An IJ denied that asylum application because Zacarias-Velasquez failed to appear for an interview. In his current asylum application, Zacarias-Velasquez stated that he came to the United States because the guerrillas wanted to kill him. He claimed the guerrillas burned down his house, threatened to kill him and his family, and killed his father after Zacarias-Velasquez refused to fight in their war against the army.

Zacarias-Velasquez participated in a final removal hearing and was the sole witness. During the hearing, the parties and the IJ communicated through an interpreter who participated via telephone. The telephonic interpreter was bilingual in Spanish and English. She struggled a few times in translating Zacarias-Velasquez's testimony. She could not understand some of the places he had lived, such as Dodge City, Kansas, and Immokalee, Florida. The interpreter apologized to the IJ and said, "the respondent is going a little bit too fast for the interpreter." The interpreter also could not understand Zacarias-Velasquez's daughter's name, Haydy.

In each case, the IJ understood the name and stated it for the record. Twice, the IJ told Zacarias-Velasquez and his lawyer to speak louder or move the microphone closer so that the interpreter on the telephone could hear. The interpreter told the IJ when she did not understand Zacarias-Velasquez, and the question and answer were repeated. The IJ participated actively in the hearing, asking Zacarias-Velasquez questions on a variety of topics in an attempt to get a complete picture of Zacarias-Velasquez's background and current status.

We recount the substance of Zacarias-Velasquez's testimony here. Until he came to the United States, he lived his entire life in Canton Tres Cruses, Guatemala. Zacarias-Velasquez described it as a place with "no law and no police protection."

Zacarias-Velasquez claimed four instances of he and his family suffering harm at the hands of the guerrillas and other groups in Guatemala. First, Zacarias-Velasquez alleged that the guerrillas harmed his father after Zacarias-Velasquez left Guatemala. Zacarias-Velasquez alleged that the guerrillas gave his father an injection in the wrong place—in the arm, not the vein—and as a result, his father got sick and died three to four months later. His father did not go to the hospital because the family could not afford it and had no means of transportation. As Zacarias-Velasquez was already in the United States, his entire knowledge of these events came from his mother. Zacarias-Velasquez does not know whether the injection was meant to harm his father or who exactly injected his father. Second, his mother's home burned down three years before he left, but his testimony regarding the arsonist's identity was vague. Third, he testified that some group tried to recruit him, but he did not know its identity other than that is was more like a criminal group in the neighborhood than an anti-government group. Fourth, his family received some threats, but he did not know the source.

Zacarias-Velasquez testified that he left Guatemala for the United States in 1992 because he was scared of the guerrillas and of the killings taking place in

Guatemala, and he wanted to find a peaceful place to live. He stated that the guerillas never detained him or had any direct contact with him and that he never served in the civil patrol in Guatemala.

Zacarias-Velasquez explained why he did not want to leave the United States for Guatemala. Despite acknowledging that "the problem with the guerrilla[s] has . . . come down a lot," he is afraid of encountering troubles in Guatemala from people thinking he has money since he came from the United States. He admitted that he basically just wants to work in the United States. He also stated that if he left the country, his girlfriend, their child, and her children would miss him, and his girlfriend would not be able to support the family.

Zacarias-Velasquez has never married and has three children. One child, Haydy Zacarias-Velasquez, was born and lives in the United States. Zacarias-Velasquez lives with his girlfriend—Haydy's mother—in Sioux Falls, South Dakota. Haydy is in good health. Zacarias-Velasquez stated that if he had to return to Guatemala, Haydy would remain in the United States. Zacarias-Velasquez has two other children who live in Guatemala. He financially supports all three children.

B. The IJ's Decision

Despite finding Zacarias-Velasquez generally credible, the IJ denied all relief, except the request for voluntary departure. The IJ found that Zacarias-Velasquez presented inadequate evidence to warrant relief. The IJ did not find that Zacarias-Velasquez had been attempting to lie to the court even though his original asylum application contained information that was different from that presented at the removal hearing. However, the IJ expressly rejected some of Zacarias-Velasquez's speculative conclusions about the guerrillas and his family. For instance, the IJ thought Zacarias-Velasquez's story of his father's murder was "very strange" and

"implausible" as the IJ had never heard of guerrillas attempting to kill people by giving them an injection.

The IJ noted that Zacarias-Velasquez's testimony about his experience in Guatemala was "very vague" and found that he left the country to escape general levels of violence. The IJ found that Zacarias-Velasquez did not engage in any activities that made or would make him the target of anyone in Guatemala at the time he left or now, especially because the guerillas are no longer an active military force. The IJ considered the impact of the 1996 peace accords, which ended the civil war and resulted in the disbanding of the guerrillas as a military force in Guatemala. The IJ found that Zacarias-Velasquez failed to prove past persecution or a well-founded fear of future persecution based on one of the protected bases for asylum and thus denied his asylum application. See 8 U.S.C. §§ 1101(a)(42)(A) and 1158(a).

The IJ denied Zacarias-Velasquez's application for withholding of removal. The IJ stated that because Zacarias-Velasquez failed to meet the lower burden of proof for a grant of asylum, he failed to meet the higher burden of proof required to establish eligibility for withholding. See 8 U.S.C. § 1231(b)(3).

The IJ denied Zacarias-Velasquez's claim for protection under the CAT. The IJ found that Zacarias-Velasquez failed to articulate any claim against the Guatemalan government or anyone acting with the consent or acquiescence of a public official, and thus failed to establish eligibility for protection. See 8 C.F.R. § 1208.18(a)(1).

The IJ denied Zacarias-Velasquez's application for cancellation of removal. The IJ found that Zacarias-Velasquez met three of the four requirements, but failed to prove his removal "would result in exceptional and extremely unusual hardship" to his child Haydy, who is an American citizen. See 8 U.S.C. § 1229b(b)(1)(D). The IJ noted that this relief is "limited to truly exceptional cases," and this case presented

inadequate evidence that Zacarias-Velasquez's removal would result in a hardship "substantially beyond" what would ordinarily be expected from a parent's deportation.

## C. The BIA's Decision

The BIA adopted and affirmed the IJ's decision, adding some of its own reasoning. The BIA held that Zacarias-Velasquez's due process claim failed because he did not prove that there were "improprieties, deficiencies, or that the respondent suffered any prejudice." The BIA noted that the IJ has the authority to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." See 8 U.S.C. § 1229a(b)(1). The BIA found that the IJ interrogated the witness to elicit specific and relevant facts consistent with the IJ's authority. Any deficiencies in the translation did not result in prejudice to Zacarias-Velasquez.

## II. Discussion

When the BIA adopts an IJ's decision and adds its own reasoning, we review both decisions. Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006). We review the BIA's factual findings for substantial evidence and its legal determinations de novo. Sholla v. Gonzales, 492 F.3d 946, 950 (8th Cir. 2007) (asylum); Mouawad v. Gonzales, 485 F.3d 405, 412 (8th Cir. 2007) (withholding of removal). The BIA's decision can be reversed only if the evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

The Attorney General has discretion to grant asylum to a refugee, defined as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Zacarias-

Velasquez's testimony about what the guerrillas may have done to his family was vague and speculative. According to Zacarias-Velasquez's testimony, neither the guerrillas nor any other group ever harmed or even detained him. He also failed to show that he or a group to which he belongs faces fear of particularized persecution. See Setiadi, 437 F.3d at 714. Even if the guerillas did recruit Zacarias-Velasquez, he did not allege that his refusal to join them was an expression of a political opinion or "that the guerrillas will persecute him *because of*[his] political opinion, rather than because of his refusal to fight with them." See Elias-Zacarias, 502 U.S. at 482-83 ("Thus, the mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment is inadequate to establish . . . the proposition that [the applicant] fears persecution *on account of* political opinion, as [§ 1101(a)(42)] requires."). We find substantial evidence supports the BIA's determination that Zacarias-Velasquez did not suffer past persecution and does not have a well-founded fear of future persecution in Guatemala.

The Attorney General has discretion to grant an alien withholding of removal to a particular country if the alien "shows a clear probability of persecution on account of a protected ground." Abdelwase v. Gonzales, 496 F.3d 904, 906-07 (8th Cir. 2007); see 8 U.S.C. § 1231(b)(3)(A). "The burden of proof for withholding of removal is higher than that required for asylum." Aziz v. Gonzales, 478 F.3d 854, 858 (8th Cir. 2007). Because Zacarias-Velasquez failed to satisfy the requirements for asylum, he "necessarily fail[ed] to meet the standard for withholding of removal." See Setiadi, 437 F.3d at 714.

To qualify for protection under the CAT, an alien must prove "'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Mouawad, 485 F.3d at 413 (quoting 8 C.F.R. § 1208.16(c)(2)). The alien also must prove that the torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" against Zacarias-Velasquez. 8 C.F.R. § 1208.18(a)(1). Zacarias-Velasquez

failed to allege that the Guatemalan government has or would likely torture him in the future. Thus, the BIA properly denied relief.

The BIA denied Zacarias-Velasquez cancellation of removal because he failed to prove that his removal would cause an "exceptional and extremely unusual hardship" to his American-citizen daughter, Haydy. See 8 U.S.C. § 1229b(b)(1)(D). We lack jurisdiction to review this finding because it "is precisely the discretionary determination that Congress shielded from our review." Meraz-Reyes v. Gonzales, 436 F.3d 842, 843 (8th Cir. 2006) (per curiam); see 8 U.S.C. § 1252(a)(2)(B)(i) ("Notwithstanding any other provision of law . . . no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1229b . . . ."); Solano-Chicas v. Gonzales, 440 F.3d 1050, 1054-55 (8th Cir. 2006) ("[W]e may not generally review the BIA's decision to deny an alien cancellation of removal."); Bropleh v. Gonzales, 428 F.3d 772, 778 (8th Cir. 2005) ("[Section 1252(a)(2)(B)(i)] precludes judicial review of discretionary denials of cancellation of removal[.]").

In removal proceedings, the Due Process Clause entitles an alien to a fair hearing. Reno v. Flores, 507 U.S. 292, 306 (1993); Tun v. Gonzales, 485 F.3d 1014, 1025 (8th Cir. 2007). "For a removal hearing to be fair, the arbiter presiding over the hearing must be neutral and the immigrant must be given the opportunity to fairly present evidence, offer arguments, and develop the record." Tun, 485 F.3d at 1025. Due process includes the right to competent translation. Id. To establish a due process claim, an alien must prove prejudice that "potentially affects the outcome." Id. at 1026 (internal quotation and ellipses omitted). We review de novo due process claims in immigration proceedings. Shoaira v. Ashcroft, 377 F.3d 837, 842 (8th Cir. 2004). Zacarias-Velasquez complained that the interpreter interrupted his testimony and that the IJ was too active in questioning Zacarias-Velasquez. The BIA disagreed, and our review of the transcript reveals no impropriety. Further, Zacarias-Velasquez failed to show prejudice. Zacarias-Velasquez was still able to testify fully before the court, and only occasionally had to repeat himself. The IJ's questioning did not

prejudice Zacarias-Velasquez because the IJ solicited pertinent information regarding Zacarias-Velasquez's applications. Moreover, the IJ is authorized to question witnesses during hearings. 8 U.S.C. § 1229a(b)(1). Thus, Zacarias-Velasquez received a fair hearing, and his due process claim fails.

## III. Conclusion

For these reasons, the petition for review is denied.

_____