*Toalombo Yanez v. Bondi*

# In the
# United States Court of Appeals
# for the Second Circuit

_____

August Term, 2023
Argued: September 18, 2023
Decided: June 13, 2025

Docket No. 22-6267-ag

_____

GLADYS EUDOSIA TOALOMBO YANEZ,

*Petitioner,*

*v.*

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,

*Respondent.*[*]

_____

Before:     CALABRESI, LEE, and PÉREZ, *Circuit Judges*.

In 2017, Gladys Eudosia Toalombo Yanez, a native and citizen of Ecuador, was placed in removal proceedings for entering the United States without inspection.   Toalombo Yanez conceded removability and filed an application for cancellation of removal on the basis that her removal would cause "exceptional

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi is substituted automatically for former Attorney General Merrick B. Garland as the Respondent.

and extremely unusual hardship" to her children, who are United States citizens. The Board of Immigration Appeals ("BIA") affirmed the decision of an Immigration Judge ("IJ") denying Toalombo Yanez cancellation of removal. The agency found that Toalombo Yanez did not meet her burden of showing that the hardship that would be experienced by her children as a result of her deportation would be exceptional and extremely unusual. Toalombo Yanez appealed to this Court, arguing that the agency's hardship determination was not supported by the evidence in the record and that the BIA impermissibly retroactively applied a new legal standard to her case.

The government initially claimed that we lacked jurisdiction over both issues because the hardship determination is an unreviewable discretionary determination and the retroactivity argument is not a colorable issue of law. However, following the Supreme Court's decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), the government concedes that we do in fact have jurisdiction to review the agency's determination that the evidence of Toalombo Yanez's children's hardships did not meet the exceptional and extremely unusual standard. We agree that we have jurisdiction over that claim, and we also conclude that we have jurisdiction to review Toalombo Yanez's retroactivity claim. In evaluating the hardship determination, we hold that the appropriate standard of review is for clear error. Upon such review, we find that the agency did not err in concluding that Toalombo Yanez failed to demonstrate the hardship required for cancellation of removal. Separately, we review the retroactivity claim *de novo* and conclude that the agency did not impermissibly retroactively apply any rules. Therefore, we **DENY** the petition.

_____

H. RAYMOND FASANO, Youman, Madeo & Fasano, LLP, New York, NY, *for Petitioner*.

BRANDON T. CALLAHAN, Trial Attorney, Office of Immigration Litigation (Brian M. Boynton, Principal Deputy Assistant Attorney General; Jennifer R. Khouri, Senior Litigation Counsel, *on the brief)*, U.S. Department of Justice, Washington, DC, *for Respondent*.

_____

EUNICE C. LEE, *Circuit Judge*:

In 2017, Gladys Eudosia Toalombo Yanez, a native and citizen of Ecuador, was placed in removal proceedings for entering the United States without inspection. Toalombo Yanez conceded removability and filed an application for cancellation of removal on the basis that her removal would cause "exceptional and extremely unusual hardship" to her children, who are United States citizens. The Board of Immigration Appeals ("BIA") affirmed the decision of an Immigration Judge ("IJ") denying Toalombo Yanez cancellation of removal. The agency found that Toalombo Yanez did not meet her burden of showing that the hardship that would be experienced by her children as a result of her deportation would be exceptional and extremely unusual. Toalombo Yanez appealed to this Court, arguing that the agency's hardship determination was not supported by the evidence in the record and that the BIA impermissibly retroactively applied a new legal standard to her case.

The government initially claimed that we lacked jurisdiction over both issues because the hardship determination is an unreviewable discretionary determination and the retroactivity argument is not a colorable issue of law. However, following the Supreme Court's decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), the government concedes that we do in fact have jurisdiction to review

3

the agency's determination that the evidence of Toalombo Yanez's children's hardships did not meet the exceptional and extremely unusual standard. We agree that we have jurisdiction over that claim, and we also conclude that we have jurisdiction to review Toalombo Yanez's retroactivity claim. In evaluating the hardship determination, we hold that the appropriate standard of review is for clear error. Upon such review, we find that the agency did not err in concluding that Toalombo Yanez failed to demonstrate the hardship required for cancellation of removal. Separately, we review the retroactivity claim *de novo* and conclude that the agency did not impermissibly retroactively apply any rules. Therefore, we **DENY** the petition.

## BACKGROUND

In 1999, Gladys Eudosia Toalombo Yanez, a native and citizen of Ecuador, entered the United States without inspection. She has remained in the United States since then. During that time, Toalombo Yanez had three children, in 2000, 2011, and 2016.

In 2015, Toalombo Yanez applied for asylum and withholding of removal. Subsequently, in 2017, the Department of Homeland Security ("DHS") issued Toalombo Yanez a notice to appear for removal hearings, charging her as removable. At a hearing in 2018, she conceded removability, and she submitted

4

an application for cancellation of removal, which allows the removal of a noncitizen to be cancelled if it would cause "exceptional and extremely unusual hardship" to a United States-citizen spouse, parent, or child of the noncitizen. *See* 8 U.S.C. § 1229b(b)(1)(D). Specifically, Toalombo Yanez argued that her removal would cause exceptional and extremely unusual hardship to her oldest child, O. (then seventeen years old), who apparently suffers from depression, and her youngest child, D. (then one year old), who purportedly has asthma.

After a 2019 merits hearing, the IJ denied Toalombo Yanez's application for cancellation of removal, finding that Toalombo Yanez did not meet "her burden in establishing that the harm to her qualifying relatives rises to the level of exceptional and extremely unusual." Certified Admin. Rec. ("CAR") at 50. Specifically, the IJ found that D. was diagnosed with reactive airway disease, not asthma, and that while D. does require medical attention, the medical evidence presented did "not indicate the severity of the condition." *Id*. at 47. Additionally, the IJ found that while the Ecuadorian health system "is not without its problems," the record did not support a finding that D. would not be able to receive treatment in Ecuador. *Id*. at 47–48. Regarding O., the IJ found that Toalombo Yanez's testimony was inconsistent with the evidence presented in the record and that the medical evidence did not "show that [O.'s] condition is so

5

severe that it would result in exceptional and extremely unusual hardship." *Id*. at 48.

Toalombo Yanez appealed to the BIA, and in 2022, the BIA dismissed her appeal. The BIA agreed with the IJ that Toalombo Yanez had failed to meet the standard of proof establishing that her children would experience the hardship sufficient to necessitate cancellation of removal. The BIA found that the IJ "properly and thoroughly considered the aggregate effect of the relevant factors, including the children's ages, health, family ties, and the financial impact of the respondent's departure from the United States." *Id*. at 4. The BIA also noted that because O. had turned 21 during the pendency of the appeal, she was no longer a "qualifying relative." *Id*. at 4 n.1. Toalombo Yanez appealed to this Court.

During the pendency of the present appeal, the Supreme Court granted certiorari in *Wilkinson v. Garland*, 601 U.S. 209 (2024), "to resolve whether the IJ's determination that a given set of established facts does not rise to the statutory standard of exceptional and extremely unusual hardship is a mixed question of law and fact reviewable under § 1252(a)(2)(D) or whether this determination is a discretionary judgment call unreviewable under § 1252(a)(2)(B)(i)." *Id.* at 216–17 (alteration and internal quotation marks omitted). After *Wilkinson* was decided

on March 19, 2024, we asked the parties here to submit supplemental briefing on its effect on our jurisdiction to hear Toalombo Yanez's appeal.

## DISCUSSION

In reviewing a BIA opinion which affirms an IJ's judgment and "closely tracks the IJ's reasoning," we consider both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). A noncitizen, like Toalombo Yanez, who is not a permanent resident, may have her removal cancelled if, first, she establishes statutory eligibility, and then second, the IJ makes the discretionary determination to cancel removal. *See* 8 U.S.C. § 1229b(b); *Wilkinson*, 601 U.S. at 212–13. Toalombo Yanez could meet the statutory eligibility requirements if she:

> (A)   has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [her] application;
>
> (B)   has been a person of good moral character during such period;
>
> (C)   has not been convicted of [certain enumerated criminal offenses]; and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to [her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1)(A)–(D). If an IJ evaluating a cancellation of removal

7

application finds, at step one, that the noncitizen satisfies the four statutory criteria, the IJ then decides, at step two, "whether to exercise his discretion favorably and grant the noncitizen relief." *Wilkinson*, 601 U.S. at 212. The burden is on the noncitizen to prove that she "satisfies the applicable eligibility requirements" and "merits a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(4)(A).

In this case, the IJ found that though Toalombo Yanez had satisfied the physical presence requirement and had not committed any disqualifying criminal offenses, she did not meet her burden of demonstrating that her removal would result in exceptional and extremely unusual hardship to a qualifying relative.[1] To satisfy the exceptional and extremely unusual hardship requirement, "a noncitizen must demonstrate that a qualifying relative would suffer hardship that is substantially different from or beyond that which would ordinarily be expected to result from their removal." *Wilkinson*, 601 U.S. at 215 (internal quotation marks omitted).

On appeal, Toalombo Yanez makes two distinct arguments. First, she

---

[1] In finding that Toalombo Yanez did not satisfy the requirement of showing exceptional and extremely unusual hardship, the IJ did not reach the question of whether Toalombo Yanez had shown good moral character. Similarly, the IJ declined to make any step-two determination of whether she was entitled to relief in the exercise of discretion.

argues that on review of the IJ's decision, the BIA erred when it determined that the evidence in the record did not sufficiently show that her child, D., would suffer exceptional and extremely unusual hardship upon her removal from the United States.[2]   Second, she argues that in affirming the IJ's judgment, the BIA impermissibly retroactively applied *Matter of J-J-G-*, 27 I. & N. Dec. 808 (B.I.A. 2020), to which it cited in its decision.   We address both issues in turn.

## I.   The Agency's Hardship Determination

Initially, the government argued that we lacked jurisdiction to review the agency's exceptional and extremely unusual hardship determination.   This was because, in the context of cancellation of removal, our jurisdiction is limited to review of "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), and we lack jurisdiction to review any other aspect, including factual or discretionary findings, of "any judgment regarding the granting of relief under section . . . 1229b," § 1252(a)(2)(B)(i).   However, in *Wilkinson*, the Supreme Court held that, for jurisdictional purposes, "[t]he application of a statutory legal standard (like the

---

[2] Toalombo Yanez does not challenge on appeal the agency's determination that O. would not suffer exceptional and extremely unusual hardship because of her depression, and that claim is therefore waived.   *See Ahlers v. Rabinowitz*, 684 F.3d 53, 66 (2d Cir. 2012) (explaining that issues not raised in the briefs on appeal are generally considered waived).

exceptional and extremely unusual hardship standard) to an established set of facts is a quintessential mixed question of law and fact" and is therefore reviewable as a question of law under § 1252(a)(2)(D). 601 U.S. at 212. The Court reasoned that while application of the exceptional and extremely unusual hardship standard "concededly requires a close examination of the facts," this "does not transform the [hardship determination] question into one of fact" unreviewable under § 1252(a)(2)(D) because "[w]hen an IJ weighs those found facts and applies the 'exceptional and extremely unusual hardship' standard, . . . the result is a mixed question of law and fact." *Id.* at 222. Accordingly, although appellate courts are without jurisdiction to review, "[f]or instance, an IJ's factfinding on credibility [or] the seriousness of a family member's medical condition," "whether those established facts satisfy the statutory eligibility standard is [a matter] subject to judicial review." *Id.* at 225. Thus, in the wake of the Supreme Court's ruling, the government concedes that we do have jurisdiction to review the agency's exceptional and extremely unusual hardship determination.

**A.**

With the question of jurisdiction settled, we turn next to determine the applicable standard of review for evaluating the agency's hardship determination.

10

Notably, the Supreme Court declined to articulate a standard of review in *Wilkinson*. But historically, we have held that "[m]ixed questions of law and fact are reviewed *de novo*." *Man Ferrostaal, Inc. v. M/V Akili*, 704 F.3d 77, 82 (2d Cir. 2012). Even within the immigration context, we have consistently reviewed *de novo* questions of law and the application of law to undisputed facts. *See Mirzoyan v. Gonzales*, 457 F.3d 217, 220 (2d Cir. 2006) (stating that an IJ's determination of whether particular facts "did not meet the legal definition of persecution in the INA" "is a mixed question of law and fact, which we review *de novo*"). However, in supplemental briefing, the government contends that "*de novo* review is foreclosed by *Wilkinson*." Gov't Supp. Br. at 8. We agree.

In *Wilkinson*, the Supreme Court explained that "[m]ixed questions 'are not all alike'"—some may be primarily legal, while others are primarily factual. 601 U.S. at 221–22 (quoting *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583 U.S. 387, 395–96 (2018)). The Court then established that the exceptional and extremely unusual hardship determination is a "primarily factual" mixed question and therefore, "review is deferential." *Id.* at 225. Thus, considering the Court's call for deference, we agree that *Wilkinson* requires reconsideration of our general approach to reviewing mixed questions of law and fact with respect to our review of § 1229b(b)(1)(D) hardship determinations.

11

The government contends that, in keeping with the deference prescribed by *Wilkinson*, the fact-intensive hardship determination should be reviewed under the "substantial evidence" standard. The substantial evidence standard of review is "highly deferential." *Singh v. BIA*, 435 F.3d 216, 219 (2d Cir. 2006). It necessitates only that the agency's factual findings be "supported by reasonable, substantial and probative evidence in the record when considered as a whole." *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir. 2010) (internal quotation marks omitted).

While the government points to *Wilkinson* in support of its proposition that "substantial evidence" is the appropriate standard for reviewing the BIA's hardship determination, as noted above, *Wilkinson* did not set a specific standard of review, but simply advised that appellate review of this particular question should be "deferential." 601 U.S. at 225. The Supreme Court did not elaborate on the nature of this "deferential" standard of review, and none of its other precedents provide a clear answer to this novel question.

In the absence of guidance from the Supreme Court to date, the issue of the appropriate standard of review remains unsettled, as this Court and many of our sister circuits have chosen to sidestep the question. *See Garcia Carrera v. Garland*, 117 F.4th 9, 12 (2d Cir. 2024) ("We need not determine the precise standard of review . . . ."); *see also Nolasco v. Bondi*, 134 F.4th 677, 682 (1st Cir. 2025) ("We need

12

not determine the standard of review applicable here, however, because we conclude that Petitioners' claim would fail even under the de novo standard that they urge us to adopt."); *Cortes v. Garland*, 105 F.4th 124, 134 (4th Cir. 2024) ("[W]e leave to future decisions the task of sorting out how to apply the standard of review discussed in *Wilkinson*."); *Cuenca-Arroyo v. Garland*, 123 F.4th 781, 784 n.1 (5th Cir. 2024) (noting that the Supreme Court did not "specify the proper standard of review for this hardship determination" but finding the court did not need to "determine exactly what degree of deference we owe"); *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 423 (6th Cir. 2024) ("Just how deferential should our review be? Neither the Supreme Court nor our circuit has answered that question precisely. There's no need to resolve the question here . . . ."); *Gonzalez-Rivas v. Garland*, 109 F.4th 1010, 1012 (8th Cir. 2024) ("Application of the statutory exceptional and extremely unusual hardship standard is a mixed question of law and fact that is primarily factual thus our review is deferential. . . . [W]e find no error or abuse of discretion in the agency's determination . . . ."); *Herrera-Arellano v. Bondi*, 2025 WL 1276500, at *3 n.3 (10th Cir. May 2, 2025) ("We are bound by *Wilkinson* . . . which require[s] 'deferential' review, rather than de novo review . . . . Beyond that, we conclude that this case does not require us to further specify our standard of review . . . ."); *Hernandez-Diaz v. U.S. Att'y Gen.*, 2024 WL 4554746, at

13

*3 (11th Cir. Oct. 23, 2024) (stating that "*de novo* review is incompatible with *Wilkinson*'s direction that our review 'is deferential,'" but finding that the court "need not determine precisely how much deference is due because [the petitioner] cannot prevail . . . even if we were to give the agency's decision minimal deference" (quoting *Wilkinson*, 601 U.S. at 225)).

However, in a recent decision, the Third Circuit, on remand from the Supreme Court, waded into the issue of the appropriate standard of review. Considering only the two standards suggested by the parties before it—abuse of discretion or substantial evidence—the court stated that "Supreme Court precedent suggests that substantial evidence is the appropriate standard." *Wilkinson v. U.S. Att'y Gen.*, 131 F.4th 134, 138 (3d Cir. 2025) ("*Wilkinson II*"). In reaching this conclusion, the Third Circuit cited two Supreme Court decisions— *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583 U.S. 387 (2018), and *Monasky v. Taglieri*, 589 U.S. 68 (2020)—in which the Court evaluated the proper standard of review for mixed questions that, like the hardship determination, are primarily factual. *See U.S. Bank*, 583 U.S. at 397–99; *Monasky*, 589 U.S. at 84.

In both *U.S. Bank* and *Monasky*, the Supreme Court concluded that the clear-error standard was the appropriate one to apply in determining the mixed questions at issue. Specifically, in *U.S. Bank*, the Supreme Court held that a

14

bankruptcy court's determination of whether a creditor qualifies as a "non-statutory insider," within the meaning of Chapter 11 of the Bankruptcy Code, was "subject only to review for clear error" because application of the arm's-length test at issue presented a mixed question that involves primarily factual work. 583 U.S. at 392–93, 397–99. Then, in *Monasky*, the Court considered the applicable standard of review for a district court's decision regarding a child's habitual residence under the Hague Convention. 589 U.S. at 83–84. There, the Court held that the habitual-residence determination is a fact-bound mixed question "subject to deferential appellate review for clear error." *Id.* at 71.

Nonetheless, the Third Circuit did not interpret these cases to require clear-error review of the hardship determination at issue here. Instead, referencing the fact that the underlying factual determinations in those cases were subject to clear-error review, the Third Circuit posited that the Supreme Court had "imported the same standard that there governed review of the factual findings themselves." *Wilkinson II*, 131 F.4th at 139. Accordingly, the Third Circuit reasoned that because "[t]he factfinder [] is best suited to evaluate the 'primarily factual' question of whether [actual] hardship is severe enough to be described as exceptional and extremely unusual," the standard of review that generally governs the BIA's factual findings should be applied to review of the ultimate

15

hardship determination.  *Id.* at 140.  Thus, because under 8 U.S.C. § 1252(b)(4)(B), "the INA instructs courts, in addressing other types of immigration relief, to review agency factfinding for substantial evidence," the Third Circuit determined that substantial evidence is the appropriate standard of review for the agency's hardship determination.  *Id.*  Even more recently, the Ninth Circuit adopted the same "substantial evidence" standard, for essentially the same reasons.  *Gonzalez-Juarez v. Bondi*, 2025 WL 1440220, at *3–5 & n.3 (9th Cir. May 20, 2025).

Following *Wilkinson*, the government urges us to conclude in this case that substantial evidence is the applicable standard of review for the agency's hardship determination.  The Third and Ninth Circuits' approach is, in some respects, a reasonable one.[3]  However, we are not convinced that, in light of the Supreme Court's decision in *Wilkinson*, substantial evidence is the correct standard of review that should be applied to the hardship determination.  But rather, for the reasons explained below, we conclude that the appropriate standard of review is clear error.

Our disagreement with the applicability of the substantial evidence

---

[3] Indeed, we agree with the Third Circuit's rejection of abuse of discretion as the appropriate standard of review given that the Supreme Court held that "[t]he hardship determination . . . [is] not [a] discretionary" matter.  *Wilkinson*, 601 U.S. at 218.

standard to the hardship determination is two-fold. First, if, as our sister circuits reasoned, the Supreme Court has been guided by the principle that, in any given legal context, the standard that governs review of the factual findings should be applied to any primarily factual mixed question at issue, then the Supreme Court could have ruled in *Wilkinson* that substantial evidence is the applicable standard of review for the hardship determination.[4] That the Supreme Court did not do so suggests to us that applicability of the substantial evidence standard to the hardship determination is not so clear or unambiguous.

Second, what is unique to appellate review of the hardship determination—and distinct from the more straightforward review of the mixed questions at issue in *U.S. Bank* and *Monasky*—is that, as the Supreme Court recognized in *Wilkinson*, Congress has made "[t]he facts underlying any determination on cancellation of removal . . . *unreviewable*," while at the same time vesting the courts with jurisdiction to review questions of law, including mixed questions. 601 U.S. at 225 (emphasis added). We therefore conclude that applying 8 U.S.C. § 1252(b)(4)(B)'s standard of review for findings of fact to the mixed question of

---

[4] *Cf. Bufkin v. Collins*, 145 S. Ct. 728, 737–39, 742 (2025) (holding that a "predominately factual [mixed] question" before the Veterans Court was subject to clear-error review while noting that clear error was the statutorily imposed standard of review for factual findings under 38 U.S.C. § 7261(a)(4)).

17

law and fact at issue—one in which the underlying factual findings are themselves *unreviewable*—would result in a kind of circular reasoning that would effectively strip the hardship determination of any meaningful review. We do not believe that the Supreme Court, in affirming our authority to review this question, intended such an outcome.

Instead, we believe that Supreme Court precedent supports applying the clear-error standard of review to the hardship determination. To reach such a conclusion, we heed the Supreme Court's guiding principle that "the standard of review for a mixed question all depends [] on whether answering it entails primarily legal or factual work," which turns on "the *nature* of the mixed question [at issue] and which kind of [adjudicatory body] . . . is better suited to resolve it." *U.S. Bank*, 583 U.S. at 395–96 (emphasis added).

*Wilkinson* provides that the hardship determination is a "primarily factual" mixed question that "requires a court to immerse itself in facts." 601 U.S. at 222, 225. "As interpreted by the BIA, the application of the 'exceptional and extremely unusual hardship' standard requires an IJ to evaluate a number of factors in determining whether any hardship to a [qualifying] family member is 'substantially different from, or beyond, that which would normally be expected from the deportation' of a 'close family membe[r].'" *Id.* at 222 (alteration in

18

original) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001)). "[T]hat analysis requires the assessment of hardship factors in their totality, often termed a 'cumulative' analysis." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 472 (B.I.A. 2002). Under this analysis, beyond making findings of "basic or historical fact," *U.S. Bank*, 583 U.S. at 394 (internal quotation marks omitted), the IJ must consider hardship factors—such as the ages, health, and living circumstances of the qualifying relative—present in a particular case and whether they, in the aggregate, rise to the level of exceptional and extremely unusual hardship, *see In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64. Thus, the nature of the mixed question at issue is one that not only "requires a close examination of the facts" but also the weighing of a multitude of factors under what can generally be understood as a totality-of-the-circumstances analysis. *See Wilkinson*, 601 U.S at 222, 225.

The Supreme Court similarly engaged with a consideration of the totality of the circumstances in applying a clear-error standard to the mixed questions in *U.S. Bank* and *Monasky*. In *U.S. Bank*, the Supreme Court explained that to determine whether a transaction was at arm's length, a bankruptcy court "takes a raft of case-specific historical facts, considers them as a whole, [and] balances them one against another." 583 U.S. at 397 (footnote omitted). Likewise, in *Monasky*, the Supreme

Court held that a district court's determination of a child's habitual residence must be governed by a "totality-of-the-circumstances standard" that requires close consideration of "the particular circumstances of the case." 589 U.S. at 79, 84. In other words, like the hardship determination here, the nature of the mixed questions in *U.S. Bank* and *Monasky* involved fact-intensive inquires that turned on a totality-of-the-circumstances analysis. We interpret these cases as providing that the "primarily factual" work at play in assessing certain fact-intensive mixed questions is not just the act of fact finding, but also the act of conducting an aggregate assessment of the established facts to determine whether the applicable legal standard has been met. The Supreme Court held that such circumstances warranted application of clear-error review to the mixed questions at issue.

Under the deferential clear-error standard of review, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Clear error" review generally has been recognized as being less deferential to the factfinder than "substantial evidence" review, and though the difference between the two standards is, on the surface, "subtle," "[t]raditionally," clear error review "has been considered somewhat stricter (*i.e.*, allowing somewhat closer judicial

review) than" the substantial evidence standard. *Dickinson v. Zurko*, 527 U.S. 150, 153, 162–63 (1999).[5]

When we consider the unique nature of the hardship determination, and the parallels between its governing test and the legal tests at issue in *U.S. Bank* and *Monasky*, we are convinced that review of this mixed question requires "somewhat closer judicial review" than that provided by the substantial evidence standard. *Id*. at 153. Although we lack the authority to review the IJ's findings of fact, we must exercise "judicial review" of "whether those established facts satisfy the statutory eligibility standard." *Wilkinson*, 601 U.S. at 225. Because the governing test for assessing hardship involves an aggregate assessment of various factors

---

[5] In explaining the distinction between the two standards of review within the context of review of factual findings in immigration cases, our case law has been ambiguous. We have suggested before that, when "reviewing the agency's factual findings," the substantial evidence standard is actually "equal to, or stricter than, the clear error standard for reviewing a district court's factual findings." *Vanegas-Ramirez v. Holder*, 768 F.3d 226, 234 (2d Cir. 2014) (citing *Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 523 n.4 (2d Cir. 2007)). We have also suggested that the level of deference afforded under both standards of review may be equivalent, stating that the two standards "bespeak no lesser deference to an IJ than to a district judge when each draws inferences from the evidence as a finder of fact." *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007). Because we lack jurisdiction to review factual findings underlying hardship determinations in the cancellation of removal context, we express no view in this case on the relationship between the substantial evidence and clear-error standards as applied to *factual findings*. But in the context of a primarily factual mixed question of law and fact like this one, where the underlying factual findings are completely unreviewable, we are concerned that the substantial evidence standard would have the effect of crippling the judicial review we are mandated to perform, and therefore the clear-error standard is required to provide for meaningful review even where "there is evidence to support" the agency's decision. *U.S. Gypsum*, 333 U.S. at 395.

through a cumulative analysis, we interpret *Wilkinson* as providing us with the authority to consider whether, in light of the totality of the circumstances, the agency's hardship determination is clearly erroneous.[6]

**B.**

With a clearer understanding of the proper standard of review, we consider the merits of the present appeal. Toalombo Yanez argues on appeal that the agency erred in its analysis of the record evidence in making the hardship determination in two specific ways. First, she argues that the evidence relating to D.'s asthma condition did in fact indicate the severity of his condition and that the evidence also showed that he would not have access to the healthcare he needs in Ecuador. Second, she argues that the agency disregarded the evidence of insecurity and danger in Ecuador, and the evidence presented did rise to a level sufficient to show "exceptional and extremely unusual hardship." We disagree and find that the IJ and BIA did not clearly err in determining that Toalombo

---

[6] As a final observation on this issue, we note that the Supreme Court has made it a point to clarify that even when considering a primarily factual mixed question, appellate courts "must correct any legal error infecting" the factfinder's decision and "should apply *de novo* review" when addressing such legal matters. *See U.S. Bank*, 583 U.S. at 398 n.7. Thus, in the process of reviewing the agency's hardship determination, to the extent that we must address any legal error—such as Toalombo Yanez's contention that the BIA retroactively, and impermissibly, applied a legal standard for determining the seriousness of her child's health issues, which we discuss below—we shall continue to review such legal matters *de novo*.

Yanez failed to meet her burden of establishing that her removal would result in exceptional and unusual hardship to a qualifying relative.

In denying relief, the IJ outlined the correct applicable legal standards, citing *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 59, for the proposition that the hardship suffered must be "substantially beyond that which would ordinarily result from an applicant's removal," CAR at 45, and *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323–24 (B.I.A. 2002), for the proposition that a generally lower standard of living in the country of removal is insufficient "to support a finding of exceptional and extremely unusual hardship," CAR at 46.

The IJ considered Toalombo Yanez's testimony regarding D.'s condition, specifically noting that he had a medical condition that required attention. The IJ also took note of the doctor's letter indicating that D. suffers from "hyperactive airway disease," which is related to, but not the same as, asthma. *Id*. at 46–47. While Toalombo Yanez argues that the IJ mischaracterized D.'s condition as not serious, the IJ simply, and correctly, noted that the doctor's letter did not "indicate the severity of the condition." *Id*. at 47. The IJ then noted that despite Toalombo Yanez's testimony that D. would not be able to receive medical care in Ecuador, the record evidence showed that while Ecuador's health system "is not without its problems," the country "has a public health system as well as private healthcare,"

and "the record does not suggest that [D.] would be unable to receive treatment." *Id*. at 47–48. Despite Toalombo Yanez's argument to the contrary, the BIA similarly did not ignore evidence presented to the IJ indicating problems with the Ecuadorian healthcare system, but rather found that this evidence did not show D. would be unable to receive care in Ecuador, thus undermining the hardship claim. *Id.* at 5.

Toalombo Yanez also argues that the IJ "totally overlooked any and all facts and evidence related to insecurity in Ecuador." Toalombo Yanez Br. at 15. However, "we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336–37 n.17 (2d Cir. 2006). The record here does not suggest otherwise. Toalombo Yanez argues that the IJ did not take into account a 2018 Crime and Safety Report from the Department of State "label[ing] Ecuador a critical-threat location for crime." Toalombo Yanez Br. at 16 (internal quotation marks omitted). But that report did not concern Ecuador as a whole, but rather a specific *city* in Ecuador—Guayaquil—which is not the location to which Toalombo Yanez testified she would return. Additionally, although Toalombo Yanez testified in 2019 that "there's a lot of crime[] right now" in Ecuador, CAR at 94, as the IJ found, the claim that this will impart exceptional and extremely unusual

24

hardship upon her children is undercut by the fact that Toalombo Yanez sent her daughter O. to visit Ecuador in 2018, where she remained for three weeks.

We are sympathetic to the fact that Ecuador may be more dangerous than the United States and that the standard of living for Toalombo Yanez and her children may be lower there. However, "the hardships [Toalombo Yanez] has outlined are simply not substantially different from those that would normally be expected upon removal to a less developed country." *In re Andazola-Rivas*, 23 I. & N. Dec. at 324. Thus, we can find no error in the agency's determination that the established facts did not demonstrate that Toalombo Yanez's removal would constitute "exceptional and extremely unusual hardship," 8 U.S.C. § 1229b(b)(1)(D), to her children, citizens of the United States.

## II.    Retroactive Application of *Matter of J-J-G-*

Toalombo Yanez also argues that the BIA impermissibly retroactively applied its 2020 decision, *Matter of J-J-G-*, when affirming the IJ's denial of her application for cancellation of removal. In its review of the 2019 IJ decision, the BIA stated the following:

> We find no clear error of fact or error of law in the manner in which the Immigration Judge weighed the evidence of record and affirm his finding that the respondent has not shown that her son's breathing problems would go untreated in Ecuador. *See Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 (B.I.A. 2020) (discussing health issues of a qualifying

25

relative in a hardship claim and the burden of establishing that adequate care for a serious medical condition is not reasonably available in the country of removal).

CAR at 5 (citation omitted). Toalombo Yanez argues that *Matter of J-J-G-*, which was decided *after* her hearing before the IJ, was the first time that the agency required a showing of a "*serious* medical condition" to satisfy the hardship standard. Toalombo Yanez Br. at 11 (quoting *Matter of J-J-G-*, 27 I. & N. at 811). The previous standard, she argues, required an applicant to show only that she had a child with "very serious health issues." *Id*. (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63). While we do have jurisdiction over this claim, we reject Toalombo Yanez's argument.

### A.

In its opening brief, the government argued that we do not have jurisdiction to review this question of retroactivity because "Toalombo Yanez's argument is not a colorable question of law." Gov't Br. at 14. We disagree.

As noted earlier, under 8 U.S.C. § 1252(a)(2)(D), we have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." However, just because a party can fashion their argument into one of law does not mean that we automatically can claim jurisdiction. With creative lawyering, any argument can be twisted into one of "law," and we have thus

recognized that "we lack jurisdiction to review any legal argument that is so insubstantial and frivolous as to be inadequate to invoke federal-question jurisdiction." *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2007). The question then becomes: how do we determine if a question of law is "colorable"?

A question of law can arise when a "discretionary decision was based on a legally erroneous standard." *Id.* (internal quotation marks omitted). In *Khan v. Gonzales*, we affirmed that if "a petitioner argues that the agency applied an erroneous legal standard . . . , the petitioner raises a question of law, which we have jurisdiction to review." 495 F.3d 31, 35 (2d Cir. 2007). This holds true *even if* the petitioner's claim "is without merit," because "[o]ur analysis of whether a petition presents reviewable claims focuses on the nature of the claims raised and not the merits of those claims." *Id.* In *Khan*, we held that we had jurisdiction to review the petitioner's claim that the IJ improperly imposed a "heightened legal standard" to Khan's claims. *Id.* We noted that although the IJ did not in fact impose a heightened legal standard, and in fact articulated and applied the correct standard, Khan's argument still "raise[d] a 'question of law'" that "we ha[d] jurisdiction to review." *Id.*

Here, Toalombo Yanez similarly contends that the BIA incorrectly required her to show that her child has a "*serious* medical condition"—an allegedly new and

27

heightened standard she argues was created by *Matter of J-J-G-*, which was decided *after* her hearing in front of the IJ. Toalombo Yanez Br. at 11 (quoting *Matter of J-J-G-*, 27 I. & N. Dec. at 811). In order to evaluate this claim, we must consider (1) whether the BIA actually relied on any new standard articulated in *Matter of J-J-G-* in dismissing Toalombo Yanez's appeal; and (2) if it did, whether the Board's reliance on that standard was impermissibly retroactive. *See Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015) (explaining the factors that courts apply when considering if an agency decision "may permissibly be applied retroactively"). In other words, the nature of Toalombo Yanez's claim requires us to engage in legal work—primarily, consideration of the BIA's legal analysis—thus raising a question of law. Accordingly, even if Toalombo Yanez's claim lacks merit, concluding that a legal argument is meritless after engaging in legal analysis is not the same as concluding that the argument was not "colorable" or was "insubstantial and frivolous." *Barco-Sandoval*, 516 F.3d at 40. Therefore, we hold that Yanez's claim that the BIA improperly applied *Matter of J-J-G-* to her case is a question of law which we have jurisdiction to review.

## B.

We now move to the merits of Toalombo Yanez's claim. Because Toalombo Yanez's claim regarding the improper application of *Matter of J-J-G-* is a question

28

of law, we review it *de novo*. *See Yanquin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). To reiterate, Toalombo Yanez argues that the BIA's citation to *Matter of J-J-G-* indicates it held her to a higher standard of proof—one that imposed a "seriousness requirement"—than the previous standard used to evaluate hardship arguments based on a child's medical issues. *See* Toalombo Yanez Br. at 11. Because Toalombo Yanez's hearing before the IJ was held prior to *Matter of J-J-G-* being decided, she argues that the BIA impermissibly retroactively applied it to her case.

A law has an impermissible retroactive effect if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994) (quoting *Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13,156)). No such retroactive effect was given to *Matter of J-J-G-* in this case.

First, because *Matter of J-J-G-* was decided after the IJ decided this case, the IJ certainly did not rely on it. As outlined above, the IJ correctly relied on *In re Monreal-Aguinaga* and *In re Andazola-Rivas* in proclaiming his decision. The IJ also never implied that a "serious medical condition" was necessary to show exceptional and extremely unusual hardship. Rather, the IJ simply stated that the

medical evidence "does not indicate the severity of the condition" and that "the record does not suggest that [D.] would be unable to receive treatment for his condition in Ecuador." CAR at 47–48.

Second, in affirming the IJ's decision, the BIA did not cite to *Matter of J-J-G-* for any proposition regarding the required degree of severity of the medical issue. Instead, the BIA relied upon the case to support its determination that there was no clear error in the IJ's assessment of the evidence in "finding that the respondent has not shown that her son's breathing problems would go untreated in Ecuador." CAR at 5. It is clear to this Court that the BIA merely cited to *Matter of J-J-G-* in finding that there was no error in the IJ's factual findings and that the burden of proof rested on Toalombo Yanez—a standard that had been well-articulated for over a decade. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. at 65 n.6 (confirming in 2001 that in the case of an exceptional and extremely unusual hardship claim, "the burden of proof and persuasion rests" on the individual petitioning to cancel their removal).

Perhaps the BIA was less than clear when it used the language "serious medical condition" in the parenthetical explaining the relevance of *Matter of J-J-G-*. CAR at 5. However, from our *de novo* review of the BIA decision, there is no indication that it held the evaluation of Toalombo Yanez's son to this allegedly

higher standard rather than the "very serious health issues" standard, as outlined in *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63. Thus, the BIA did not use *Matter of J-J-G-* to "impose[] a new duty" on Toalombo Yanez, *Landgraf*, 511 U.S. at 269, and the case was not impermissibly retroactively applied.

## CONCLUSION

For the reasons stated above, the petition for review is **DENIED**.