# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2476

_____

Eugenio Alonso-Juarez

*Petitioner*

v.

Pamela Bondi, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 20, 2025
Filed: March 12, 2026
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

Eugenio Alonso-Juarez faces deportation. His hope is that the hardship to his family will make it possible for him to stay. *See* 8 U.S.C. § 1229b(b)(1)(D) (discussing cancellation of removal). With nothing "exceptional" or "extremely unusual" about it, however, we deny the petition for review. *Id.*

## I.

A native of Mexico, Alonso-Juarez illegally entered the United States over a decade ago and settled in Missouri along with his wife. He experienced some bad luck a few years later, when he had removal proceedings brought against him and suffered multiple injuries after falling from a roof.

The immigration proceedings have not gone his way. After admitting he was removable, he requested cancellation based on "exceptional and extremely unusual hardship" to his two American-born children. *Id.* At one point, he asked for more time to gather evidence about his injuries, but the immigration judge denied it for lack of good cause. *See Choge v. Lynch*, 806 F.3d 438, 441 (8th Cir. 2015) (discussing the standard for granting a continuance).

Only he and his wife testified at the removal hearing. Both explained that deportation would cause hardship for their children, mainly because of the lower standard of living and poor educational prospects in Mexico. Each also thought work would be harder to find there.

The immigration judge denied relief. Although Alonso-Juarez satisfied several requirements for cancellation of removal, he did not show that a qualifying relative would suffer "exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(D). The Board of Immigration Appeals agreed—both with the denial of a continuance and his ineligibility for relief—and dismissed the appeal.

## II.

The purpose of asking for a continuance, as Alonso-Juarez told the immigration judge, was to gather medical reports to document his injuries. If they were as severe as he thought, then it would show the "potential insufficiency of medical care" in Mexico and his inability "to work and earn a livable wage," which would have strengthened his claim of hardship. Even though granting a continuance

usually lies within the discretion of the immigration judge, *see Thimran v. Holder*, 599 F.3d 841, 845 (8th Cir. 2010), our review is de novo because Alonso-Juarez claims that the denial of one violated his due-process rights, *see Zacarias-Velasquez v. Mukasey*, 509 F.3d 429, 435 (8th Cir. 2007). The constitutional test is whether rejecting the request was a "fundamental procedural error" that "prejudice[d]" him. *Alva-Arellano v. Lynch*, 811 F.3d 1064, 1066 (8th Cir. 2016).

The immigration judge and the Board both concluded that there was no good cause for a continuance, primarily because "the record already contained documentary evidence relating to [Alonso-Juarez's] medical condition." Getting to "fundamental procedural error" is an even steeper hill to climb. *Id.* By the time of the hearing, he was awaiting a single medical report from a doctor evaluating his workers' compensation claim. It is unclear what it would have added to a record that included several already. Immigration judges are free to "avoid unduly protracted proceedings," *Thimran*, 599 F.3d at 845 (citation omitted), and moving them along here was not fundamentally unfair, *see Choge*, 806 F.3d at 441–42.

Nor was it prejudicial. *See Alva-Arellano*, 811 F.3d at 1066. At this point, we can only guess what the extra report would have said, because he never provided it to the Board or us. Perhaps it would have been helpful, perhaps not. What we can say is that there is no basis on this record to conclude that "the outcome of the proceeding may . . . have been different" if the immigration judge had given him a continuance. *Tun v. Gonzales*, 485 F.3d 1014, 1026 (8th Cir. 2007).

### III.

Missing was the hardship necessary for cancellation of removal. Not just any will do: it must be "exceptional and extremely unusual." 8 U.S.C. § 1229b(b)(1)(D). Even if Alonso-Juarez showed that deportation would pose a hardship for his children, the immigration judge ruled that nothing was "exceptional" or "extremely unusual" about it. *Id.*

A.

Reviewing a hardship determination is new to us. Before *Wilkinson v. Garland*, we left it to the immigration judge and the Board. 601 U.S. 209 (2024); *see, e.g.*, *Meraz-Reyes v. Gonzales*, 436 F.3d 842, 843 (8th Cir. 2006) (per curiam) (holding that it was "precisely the discretionary determination that Congress shielded from our review"). Post-*Wilkinson*, however, "application of the exceptional and extremely unusual hardship standard to a given set of facts is reviewable." 601 U.S. at 217. Now we just need to figure out *how* to do it.

The how includes the standard of review. *Wilkinson* provides a clue. It says that the hardship determination is, "inescapably, a mixed question of law and fact." *Id.* at 221. For a "mixed question," picking a standard "depends . . . on whether answering it entails primarily legal or factual work." *U.S. Bank N.A. ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018); *see Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020) (noting that this test provides the "proper standard" for review of "mixed questions in . . . a district, bankruptcy, or *agency* decision" (emphasis added) (internal quotation marks omitted)). If a case requires us to "expound on the law, particularly by amplifying or elaborating on a broad legal standard," our review is de novo. *U.S. Bank*, 583 U.S. at 396. But clear error or another deferential standard applies when a mixed question "immerse[s] [the] court[] in case-specific factual issues," like "marshal[ing] and weigh[ing] evidence, mak[ing] credibility judgments, and otherwise address[ing] . . . narrow facts that utterly resist generalization." *Id.* (citation omitted).

Properly categorizing the hardship inquiry depends, once again, on *Wilkinson*, which places the focus on whether a qualifying relative would suffer hardship "substantially different from, or beyond, that which would normally be expected from [an applicant's] deportation." 601 U.S. at 222 (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001)). Factors the Board considers include "the health of the [applicant] and qualifying family members," any "family

-4-

ties in the United States and abroad," and "the political and economic conditions in the country of return." *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63. Those are "about as factual sounding as any mixed question gets." *U.S. Bank*, 583 U.S. at 397–98 (discussing a similar multi-factor balancing test).

We know from *Wilkinson* that factually intensive mixed questions get a "more deferential standard of review," but which one? 601 U.S. at 222. Among the choices are substantial evidence, clear error, and abuse of discretion. This time, the answer comes from an immigration statute, 8 U.S.C. § 1252(b)(4)(B), which says that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." We have interpreted it as requiring review for substantial evidence when factual issues predominate a mixed question. *See Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007) (discussing the provision's history). It provides the default standard for reviewing factual findings of all kinds in immigration proceedings. *See Ramirez v. Sessions*, 902 F.3d 764, 773 (8th Cir. 2018) (explaining that we review "decisions on asylum, withholding of removal, and [Convention Against Torture] protection" for substantial evidence (citation omitted)); *see also Urias-Orellana v. Bondi*, 607 U.S. __, No. 24-777, slip op. at 1–2 (Mar. 4, 2026) (holding that it applies when determining whether "a given set of undisputed facts . . . constitute[s] persecution" in asylum proceedings).

In fact, we already assess whether an alien has "good moral character," one of the other statutory requirements for cancellation of removal, 8 U.S.C. § 1229b(b)(1)(B), under the substantial-evidence standard. *See Ikenokwalu-White v. I.N.S.*, 316 F.3d 798, 803, 805 (8th Cir. 2003). It too is a fact-intensive mixed question. *See Hernandez v. Garland*, 28 F.4th 917, 921 (8th Cir. 2022) (noting that the finding on moral character "is a matter of applying the law to the facts"). We cannot think of a reason why a similar fact-intensive inquiry like "exceptional and extremely unusual hardship," which appears in a nearby provision of the same statute, would be any different. *See Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1210–11 (11th Cir. 2025) (holding that "substantial evidence" governs review of the hardship determination); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th

Cir. 2025) (same); *Wilkinson v. Att'y Gen.*, 131 F.4th 134, 142 (3d Cir. 2025) (*Wilkinson II*) (same). *But see Toalombo Yanez v. Bondi*, 140 F.4th 35, 42 (2d Cir. 2025) (adopting clear error).

The other possibilities do not work. Clear error, for example, is the standard for findings made by a *court*, not an agency, even when the subject is immigration. *See, e.g.*, *Monasky v. Taglieri*, 589 U.S. 68, 83–84 (2020) (reviewing a district court's determination of a "habitual residence" under the Hague Convention for clear error). The equivalent standard for reviewing agency findings, by contrast, is generally substantial evidence. *See Dickinson v. Zurko*, 527 U.S. 150, 155–56 (1999) (observing that, as a default, "the term 'clearly erroneous' . . . signal[s] *court/court* review" and "the term 'substantial evidence' . . . signal[s] . . . *court/agency* review" (emphases added) (citations omitted)).

Abuse of discretion has a place in reviewing agency decisions, but only when the underlying decision is discretionary. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 427 (2023) (explaining that agency "decisions on matters of discretion are reviewable for abuse of discretion" (citation omitted)). Granting cancellation of removal is ultimately an exercise of discretion by the Attorney General. *See* 8 U.S.C. § 1229b(b)(1). It just comes after an alien has already satisfied the eligibility requirements, including good moral character and exceptional and extremely unusual hardship. *See Wilkinson*, 601 U.S. at 212–13 (discussing the exercise of discretion at step two). Those requirements, which are mandatory, leave no room for abuse-of-discretion review.[1] *See id.* at 218.

---

[1]A prior version of the statute allowed for suspension of removal if, "*in the opinion* of the Attorney General," it would "result in extreme hardship to the alien" or a qualifying relative. 8 U.S.C. § 1254(a)(1) (1995) (emphasis added). Some courts interpreted this language as requiring abuse-of-discretion review. *See, e.g.*, *Amezquita-Soto v. I.N.S.*, 708 F.2d 898, 902–03 (3d Cir. 1983); *Bueno-Carrillo v. Landon*, 682 F.2d 143, 145–46 (7th Cir. 1982) (per curiam). But once the statute changed in 1996, it no longer had the phrase "in the opinion of the Attorney General," *see* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 240A(b)(1)(D), 110 Stat. 3009-546, 594 (codified at 8

B.

Having decided that our review of the hardship determination is for substantial evidence, our final task is to decide whether it exists on this record. We conclude it does.

In finding that any hardship to Alonso-Juarez's children was neither exceptional nor extremely unusual, the immigration judge "closely reviewed" the evidence. Central to the analysis was a medical report explaining that he could "return to work without restriction," which cast doubt on his claim that he would be unable to find a job in Mexico. Also playing a role was the presence of family that could "help with the . . . transition." Together with other proof, there was enough for a reasonable factfinder to conclude that any hardship would not be "substantially different from, or beyond, that which would normally be expected to result from . . . deportation." *Wilkinson*, 601 U.S. at 222 (citation omitted); *see N'Diaye v. Barr*, 931 F.3d 656, 662 (8th Cir. 2019) (describing what qualifies as "substantial evidence").

IV.

We accordingly deny the petition for review.

———————————————

U.S.C. § 1229b), which eliminated any discretion that previously existed. *See Wilkinson*, 601 U.S. at 224 (rejecting the government's attempt to "read" the Attorney General's "discretion back into the current version of the statute"); *Wilkinson II*, 131 F.4th at 141 ("As the Supreme Court made crystal-clear in remanding this case, . . . hardship determinations [a]re no longer discretionary.").